**INTER–CITY BEVERAGE CO., INC., et al., Appellants,**

v.

**KANSAS CITY POWER & LIGHT CO., Missouri Public Service Commission, Kansas Corporation Commission, Respondents.**

No. WD 48856.

Missouri Court of Appeals, Western District.

Oct. 25, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1994.

Application to Transfer Denied Jan. 24, 1995.

Jeremiah Finnegan, Dennis Egan, Kansas City, for appellants.

William H. Sanders, Kansas City, William Shansey, Jefferson City, John Mullen, Kansas City, for respondents.

Before ULRICH, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Judge.

This case presents an issue as to which tribunal has jurisdiction to interpret a provision in the Kansas City Power & Light Company (KCP & L) rate schedule. The appeal resides here, according to some of the parties, by virtue of the parties' and trial court's desire for an appellate court determination of subject matter jurisdiction before possible class certification and extensive discovery which could result. Notwithstanding the counsels' statements in their respective briefs and oral argument alluding to a "friendly decision" to circumvent the normal procedures, we will proceed under the assumption that the trial court ruled on the respondents' motion to dismiss on the merits.

The plaintiffs are eight Missouri and one Kansas industrial or business customers of KCP & L. Their petition for damages, filed August 18, 1993, alleges that the defendant KCP & L misinterpreted language in its rate schedules which resulted in overcharges to them and other similarly situated customers. These tariffs were on file with the Missouri Public Service Commission (MPSC) and the Kansas Corporation Commission (KCC). Plaintiffs seek a declaratory judgment and an award of damages for the "overcharges."

KCP & L filed a motion to dismiss on October 21, 1993, contesting the trial court's subject matter jurisdiction to construe rate schedules of a public utility, contending generally that the plaintiffs' petition was a matter within the exclusive jurisdiction of the MPSC and KCC. Both MPSC and KCC requested intervention which was granted and they both joined in the motion for dismissal.

Plaintiffs' lawsuit charges KCP & L's interpretation of its tariffs (rate schedules) resulted in overcharges to each plaintiff. The trial court sustained KCP & L's motion to dismiss December 3, 1993, holding that the court lacked subject matter jurisdiction. The court ruled that the MPSC and the KCC had exclusive jurisdiction.

A brief description of the rate schedules is in order. The Determination of Demand provision in each of the rate schedules specifies the method to be utilized by KCP & L for computing monthly "billing demand." The "billing demand" is used to compute the "demand charge" and the "energy charge" which comprise the two components of the monthly billing charged to each commercial and industrial customer served in Missouri and Kansas. A demand charge reflects the cost of maintaining sufficient electric generating capacity to meet the customers' peak demand needs.

There are variations in the Determination of Demand provisions but the following is representative and sufficient for our purposes:

DETERMINATION OF DEMAND:

Demand will be determined by demand instruments or, at the Company's option, by demand tests. The billing demand for any month included in the Summer Season shall be the highest demand indicated in any 30–minute interval during that month or such higher minimum billing demand as may be *established by contract.* The billing demand for any month included in the Winter Season shall be 70% of the highest demand indicated during that month or such higher billing demand as may be *established by contract.*

The minimum billing demand *established by contract* shall be not less than ten kw for secondary electric service nor less than the higher of:

(i) 80% of the highest billing demand occurring in that portion of the Summer Season included in the 12–month period ending with the current month; or

(ii) 50% of the highest billing demand occurring in that portion of the Winter Season included in the 12–month period ending with the current month.

(Emphasis added). The "established by contract" language was first utilized by KCP & L in its rate schedule in 1951. In calculating the plaintiffs' bills, KCP & L utilized the alternative methods of computing billing "demand as may be established by contract." Plaintiffs complain that they had no contracts with KCP & L which would allow KCP & L to bill at the higher demand. They contend they should have received bills for service in each month of the Summer Season based on the highest demand indicated in any 30–minute interval in the summer months and receive bills for service in each month of the Winter Season based on 70% of the highest demand during the winter months. The language in question and the interpretation of the rate schedules has for many years been consistently construed by KCP & L. In September 1992, the emphasized language which precipitated this lawsuit, "established by contract," was removed. No one disputes the charges following that time. The dispute centers on the years before the language was changed.

Plaintiffs seek damages for overcharges that they contend resulted from the improper construction by KCP & L of the Determination of Demand provisions before the 1992 revision. The plaintiffs timely appealed the court's ruling sustaining the respondents' motion for dismissal.

■ In their first point on appeal, the plaintiffs charge that the trial court had subject matter jurisdiction to decide the appropriate construction to be given the Missouri filed rate schedules of an electric public utility. The parties do not request a decision as to which provision should determine the tariff, but rather they seek a ruling as to which

tribunal should make that decision: the MPSC or the circuit court.

■ Plaintiffs rely exclusively on *Wilshire Constr. Co. v. Union Elec. Co.*, 463 S.W.2d 903 (Mo.1971). The *Wilshire* case was commenced by five residential developers who sued Union Electric for alleged overcharges collected by Union Electric under contracts for the installation of underground wiring. The issue in *Wilshire* was the interpretation of the separate contracts that the plaintiffs had signed with Union Electric. In order to interpret the contracts, the court found it necessary to analyze the rate schedule. *Id.* at 906–07. Thus, the court had to construe the rate schedule in order to properly interpret the contracts. The actual rates set by the MPSC were not at issue. The question addressed was whether the terms of the contracts were consistent with the rate schedules. We are here concerned with whether the rate schedules required written contracts. The court defined its jurisdiction to include those cases in which "a controversy arises over the construction of a contract or of a rate schedule upon which a contract is based...." *Id.* at 905. In those situations in which there is a claim of an overcharge, only the courts have jurisdiction. *Id.* *Wilshire* does not answer the problem presented here.

■ Here, we are not concerned with the construction of a contract or a rate schedule upon which a contract is based. The issue placed before this court is which of two rates filed and published with the MPSC should be used. The MPSC is an agency of limited jurisdiction and has only such powers as are conferred upon it by statute. *State ex rel. Kansas City Power & Light Co. v. Buzard*, 350 Mo. 763, 168 S.W.2d 1044, 1046 (Banc 1943).

Our Supreme Court has determined that the regulation and fixing of rates or charges for public utilities, and the classification of the users or consumers to whom the rates are chargeable is the function of the MPSC. *Id.* In *Buzard*, the Puritan Compressed Gas Corp. sought a refund from the KCP & L for amounts paid for its electric service, contending that its electric bill should have been

calculated using the lower of the two rate schedules filed with and approved by the MPSC instead of the higher rate. *Id.*, 168 S.W.2d at 1045. KCP & L challenged the jurisdiction of the circuit court arguing that the availability and applicability of rates and services was a matter exclusively conferred upon the MPSC. *Id.* The respondent contended that the court had jurisdiction because the claim was for overcharges for part of one year and for the prior years and a determination as to which of two rates in question were applicable to the plaintiff. *Id.*, 168 S.W.2d at 1047. The Supreme Court reviewed the relevant statutes, which for our purposes remain the same today, and held that the MPSC had exclusive jurisdiction to determine which of two approved rates should be charged to the customer. *Id.*

Chapters 386 and 393, RSMo 1986 & Supp. 1993, set forth the scheme by which the MPSC is granted the exclusive jurisdiction to determine, in the first instance, the interpretation of the lawful rate applicable to the service provided to the customer. See also, *DeMaranville v. Fee Fee Trunk Sewer, Inc.*, 573 S.W.2d 674 (Mo.App.1978), in which the court held that the first step to obtaining a decision must be before the MPSC.

> [T]he [MPSC] makes its decision regarding the rates and classification. Matters within the jurisdiction of the Public Service Commission must first be determined by it in every instance before the courts have jurisdiction to make judgments in the controversy.

*Id.* at 676.

In *DeMaranville,* the plaintiffs sued Fee Fee Trunk Sewer, Inc. for damages resulting from the collection of allegedly excessive and discriminatory tariffs. The court noted that, pursuant to § 386.390, RSMo Supp.1977, the plaintiffs had filed a complaint and had obtained a decision from the MPSC that the tariff was unjust, unreasonable and unduly discriminatory. *Id.*

We hold that the resolution of this issue falls within the holding of *Buzard* and the Missouri statutes which confer primary jurisdiction over determination of rates upon the MPSC. Point denied.

■ Included among the claims presented is one by a Kansas customer of KCP & L. The same issue is presented: whether the Kansas Corporation Commission (KCC) or the circuit court has subject matter jurisdiction over the Kansas rate schedule. In this claim we are presented with a plaintiff who is a Kansas resident asking the Missouri courts to establish and interpret the Kansas utility regulations. The plaintiff maintains that its claim for damages is provided for in K.S.A. 66–176 (1992), which states:

> Any public utility or common carrier which shall violate any of the provisions of law for the regulation of such public utilities or common carriers shall forfeit, for every offense, to the person, company or corporation aggrieved thereby, three times the actual damages sustained by the party aggrieved, together with the costs of suit, and a reasonable attorney fee, to be fixed by the court; and if appeal be taken from the judgment or any part thereof, it shall be the duty of the appellate court to include in the judgment an additional reasonable attorney's fee for services in the appellate court or courts.

The respondents argue that Kansas case law, specifically *Pelican Transfer & Storage, Inc. v. Kansas Corp. Comm'n,* 195 Kan. 76, 402 P.2d 762 (1965), grants primary and exclusive jurisdiction over tariff interpretation questions to the KCC and, in the alternative, that the doctrine of primary jurisdiction mandates that the KCC decide the case on its merits before judicial review.

Not unlike the MPSC, the KCC is given broad authority to investigate, determine and set reasonable rates based upon a comprehensive statutory scheme. K.S.A. 66–101 *et seq.* (1992). K.S.A. 66–101 grants the KCC "full power, authority and jurisdiction to supervise and control the electric public utilities ... doing business in Kansas, and is empowered to do all things necessary and convenient for the exercise of such power, authority and jurisdiction." K.S.A. 66–101g directs that the KCC's jurisdiction "shall be liberally construed" and that the KCC is granted "all incidental powers necessary" to effectuate the regulation of electric public utilities. Every electric utility doing busi-

ness in Kansas is required to file with the KCC copies of all schedules of rates, joint rates, tolls, charges, classifications, and division of rates. K.S.A. 66–101c.

In Pelican, the plaintiff filed a declaratory judgment action in the district court requesting a construction of its certificate of convenience and necessity and a declaration of what services it could provide. The Kansas Supreme Court held that the exclusive and primary jurisdiction was in the KCC "to hear and determine *all* questions with respect to the supervision and regulation of motor carriers operating in this state." *Pelican,* 402 P.2d at 766 (emphasis added). The court construed the statute as follows:

> Inherent in these powers granted by the legislature is the [KCC's] authority to interpret its rules, regulations, orders and decisions so as to insure the effectiveness and uniformity of its procedures.

*Id.,* 402 P.2d at 765. The court went on to note that the legislature had statutorily provided for judicial review in the event the aggrieved party desired to challenge the KCC's order. *Id.,* 402 P.2d at 766. Therefore, a party must first seek a remedy before the KCC, then may appeal to the district court and then to the appellate court. *Id.*

Plaintiff cites to other Kansas cases, three in particular, which we have reviewed and find each distinguishable on the point of whether the Kansas district court has subject matter jurisdiction. No purpose would be served by further analysis. These cases do not indicate a departure from the holding in *Pelican.* Pelican directs plaintiff's claim to the KCC for an initial determination of whether an overcharge has occurred under the rate schedule at issue here. Point denied.

■ Finally, plaintiffs complain that the respondent's statement of facts is argumentative and in violation of Rule 84.04(f) in that it introduces and argues policy issues and consequences of the outcome in the event the courts construe the case against the KCP & L. Plaintiffs' observations are correct and the practice of arguing the case in the statement of facts portion of the brief is not to be encouraged. Nevertheless, the mistake is not such a sufficient violation to warrant

striking defendant's brief or the imposition of other suggested penalties.

Judgment of dismissal is affirmed.

All concur.