**STATE of Missouri, ex rel., AG PROCESSING, INC., A Cooperative and Sedalia Industrial Energy Users Association, Intervenor; State of Missouri, ex rel., Public Counsel, Appellant,**

v.

**PUBLIC SERVICE COMMISSION for the STATE of Missouri, Respondent,**

**KCP & L Greater Missouri Operations Co., Respondent.**

No. WD 70799.

Missouri Court of Appeals, Western District.

March 23, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2010.

Application for Transfer Denied June 29, 2010.

---

Lewis R. Mills, Jr., St. Louis, for Appellant.

Jamie N. Ott, for Respondent PSC.

Karl Zobrist, Kansas City, for Respondent KCP & L.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, VICTOR C. HOWARD, Judge and JAMES E. WELSH, Judge.

JOSEPH M. ELLIS, Judge.

The Office of Public Counsel, AG Processing, Inc., and the Sedalia Industrial Energy Users' Association appeal the circuit court's judgment affirming a decision of the Public Service Commission ("the Commission") approving certain tariffs filed by KCP & L Greater Missouri Operations Company (formerly known as Aquila, Inc.).[1] For the following reasons, the cause is remanded to the circuit court with directions to remand to the Commission for further proceedings consistent with this opinion.

On June 3, 2006, Aquila filed proposed rate schedules to implement a general rate increase along with rate schedules containing a fuel adjustment clause. "A fuel adjustment clause is a clause, filed as part of an electric utility's tariff, which allows it automatically to increase or decrease the charge for power per kilowatt-hour to consumers by the amount of an increase or decrease in the utility's fuel costs...."[2] *State ex rel Util. Consumers Council of Mo., Inc. v. Pub. Serv. Comm'n,* 585 S.W.2d 41, 44 (Mo. banc 1979). The fuel adjustment clause proposed by Aquila would allow Aquila to later recoup from its customers, through a surcharge, any additional costs incurred by Aquila due to increased fuel and/or purchased power costs over a specified period. The fuel adjustment clause was opposed by the Office of Public Counsel ("the OPC") and assorted customers of Aquila. After an evidentiary hearing, on May 17, 2007, the Commission issued its Report and Order rejecting

---

1. For ease of reference, this company will be simply referred to as Aquila the remainder of this opinion.

2. 4 CSR 240–20.090(1)(C) defines a fuel adjustment clause as "a mechanism established in a general rate proceeding that allows periodic rate adjustments, outside a general rate proceeding, to reflect increases and decreases in an electric utility's prudently incurred fuel and purchased power costs."

these rate and fuel adjustment tariffs[3] and ordering Aquila to submit proposed rate and fuel adjustment tariff sheets that conformed to the requirements set forth in the Report and Order.

After Aquila filed new tariff sheets, on May 17, 2007, the Commission issued an order approving some of the general rate schedules but rejecting the fuel adjustment tariff sheets. The Commission did, however, conclude that "it would be reasonable and in the public interest to permit Aquila to use an adjustment mechanism" and that "Aquila should be authorized to implement a fuel adjustment clause in this case." The Commission ordered Aquila to file proposed electric service tariff sheets consistent with its opinion, which set out certain requirements for that fuel adjustment clause.

Aquila filed new tariff sheets on May 25, 2007. On June 14, the Commission entered its Order Rejecting Tariff, Granting Clarification, Directing Filing and Correcting Order Nunc Pro Tunc. The Commission again expressly rejected the fuel adjustment tariff sheets filed by Aquila. Aquila submitted proposed electric service tariff sheets to the Commission once more on June 18, 2007. Those tariff sheets called for adjustments based upon six month periods in which the difference between the base fuel cost and the actual fuel cost was calculated. The tariff sheets called for these periods to run from June to November and from December through May of each year until 2011. On June 29, 2007, the Presiding Officer assigned by the Commission entered an order approving the tariff sheets submitted by Aquila stating:

Based upon its review of the Revised Tariff Sheets and Staff's June 25th Recommendation, and for good cause shown pursuant to Section 393.140(11), RSMo 2000, the Commission concludes that the Revised Tariff Sheets are consistent with the Report and Order, as clarified by the First Tariff Order and Second Tariff Order, Section 386.266 RSMo, and Commission Rule 4 CSR 240–20.090, and should be approved *to become effective on and after July 5, 2007.*

(Emphasis added.)

On December 28, 2007, Aquila filed tariff sheets seeking to adjust its rates to recover the difference between base fuel costs and actual fuel costs that had been incurred between June 1 and November 31, 2007. The OPC filed a motion to reject those tariffs because Aquila was attempting to adjust the rates based in part on fuel cost increases occurring prior to the July 5, 2007 effective date of the fuel adjustment clause in violation of Missouri's prohibition on retroactive ratemaking. AG Processing Inc. and Sedalia Industrial Energy Users' Association (hereafter "the Consumers") also challenged the new tariffs. On February 14, 2008, the Commission issued its Order denying the OPC's motion and accepting Aquila's tariffs. The Commission concluded that under its regulations the effective date of the specific fuel adjustment clause tariff sheets was not relevant and that its general approval of the use of a fuel adjustment clause on May 17, 2007, provided the relevant date for determining when recoupment for fuel costs could begin. After the Commission denied the OPC's motion for rehearing, the OPC sought review in the Circuit Court of Cole County. On February 6, 2009, the

---

3. In the context of cases before the Commission, the terms "tariff" and "rate schedule" are synonymous. *See Inter–City Beverage Co. v. Kansas City Power & Light Co.,* 889 S.W.2d 875, 876 (Mo.App. W.D.1994); *Carter's Custom Tile & Remodeling, Inc. v. S.W. Bell Tel. Co.,* 834 S.W.2d 892, 893 (Mo.App. E.D. 1992).

circuit court entered its judgment affirming the decision of the Public Service Commission. The OPC brings one point on appeal, and the Consumers bring two.

■ In its sole point, the OPC claims the Commission erred in issuing its February 14, 2008, Order because, under § 386.266.1, a fuel adjustment clause does not become effective until after the rate schedules have been approved and become effective and because allowing recovery for fuel costs prior to the effective date of the tariff sheets violates the prohibition against retroactive ratemaking. The Consumers' first point largely mirrors that of the OPC.

■ "On appeal from a decision by the circuit court in a case adjudicated by the PSC, the appellate court reviews the decision of the PSC, not the judgment of the circuit court." *State ex rel. Associated Natural Gas Co. v. Pub. Serv. Comm'n,* 954 S.W.2d 520, 528 (Mo.App. W.D.1997). "The role of this court in reviewing the decision of the PSC is to determine whether the PSC's order is lawful and reasonable." *Id.* "The lawfulness of a PSC decision is determined from the statutory authority of the PSC." *Id.* "In determining whether the PSC's decision was lawful, this court exercises unrestricted, independent judgment and must correct erroneous interpretations of law." *Id.*

■ Section 393.140(11)[4] provides that "[n]o corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services *as specified in its schedules filed and in effect at the time*." (Emphasis added.) "The filed rate doctrine ... precludes a regulated utility from collecting any rates other than those properly filed with the appropriate regulatory agency." *State ex rel. Associated Natural Gas Co.,* 954 S.W.2d at 531. "This aspect of the filed rate doctrine constitutes a rule against retroactive ratemaking or retroactive rate alteration." *Id.* Retroactive ratemaking is defined as "the setting of rates which permit a utility to recover past losses or which require it to refund past excess profits collected under a rate that did not perfectly match expenses plus rate-of-return with the rate actually established." *State ex rel. Util. Consumers' Council of Mo.,* 585 S.W.2d at 59. The filed rate doctrine's rule against retroactive ratemaking has an "underlying policy of predictability, meaning that if a utility is bound by the rates which it properly filed with the appropriate regulatory agency, then its customers will know *prior to purchase* what rates are being charged, and can therefore make economic or business plans or adjustments in response." *State ex rel. Associated Natural Gas Co.,* 954 S.W.2d at 531 (emphasis added). In other words, the approved tariffs are to "provide advance notice to customers of prospective charges, allowing the customers to plan accordingly." *Id.*

Moreover, "[t]he language of section 386.500.2 (requiring the application for rehearing to be filed before the effective date of the order) causes us to believe that the General Assembly wished to allow the PSC an opportunity to review any applications for rehearing *before new rates are implemented* so that the PSC can determine whether there was anything it had overlooked or misinterpreted." *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n,* 276 S.W.3d 303, 312 (Mo.App. W.D.2008) (emphasis added) (internal quotation omitted). "Thus, the PSC must delay imple-

4. All statutory references are to RSMo 2000 unless otherwise noted.

mentation of new rates long enough to allow such applications to be filed." *Id.*

Section 386.266, RSMo Cum.Supp.2005, grants the Commission statutory authority to authorize a fuel adjustment clause, providing:

1. Subject to the requirements of this section, any electrical corporation may make an ***application to the commission to approve <u>rate schedules</u> authorizing an interim energy charge, or periodic rate adjustments outside of general rate proceedings to reflect increases and decreases in its prudently incurred fuel and purchased-power costs,*** including transportation. The commission may, in accordance with existing law, include in such <u>rate schedules</u> features designed to provide the electrical corporation with incentives to improve the efficiency and cost-effectiveness of its fuel and purchased-power procurement activities.

\*　　\*　　\*

4. The commission shall have the power to approve, modify, or reject adjustment mechanisms submitted under subsections 1 to 3 of this section only after providing the opportunity for a full hearing in a general rate proceeding, including a general rate proceeding initiated by complaint. ***The commission may approve such <u>rate schedules</u> after considering all relevant factors*** which may affect the costs or overall rates and charges of the corporation, provided that if finds the adjustment mechanism set forth in the schedules:

(1) Is reasonably designed to provide the utility with a sufficient opportunity to earn a fair return on equity;

(2) Includes provisions for an annual true-up which shall accurately and appropriately remedy any over– or under-collections, including interest at the utility's short term borrowing rate, through subsequent rate adjustments or refunds;

(3) In the case of an adjustment mechanism submitted under subsections 1 and 2 of this section, includes provisions requiring that the utility file a general rate case with the effective date of new rates to be no later than four years after the effective date of the commission order implementing the adjustment mechanism. . . .

5. Once such an adjustment mechanism is approved by the commission under this section, it shall remain in effect until such time as the commission authorizes the modification, extension, or discontinuance of the mechanism in a general rate case or compliant proceeding.

(Emphasis added.) Thus, under the plain language of this statute, the Commission may approve a fuel adjustment clause by adopting specific rate schedules (tariffs) incorporating such an adjustment. Only costs incurred after the effective date of an appropriate tariff may be recovered under a fuel adjustment clause. *See State ex rel. Associated Natural Gas Co.,* 954 S.W.2d at 531.

In the case at bar, the Commission's May 17 Order simply announced that it would, in the future, approve rate schedules submitted by Aquila that utilized a fuel adjustment clause, provided certain criteria were met. Those criteria were not specific enough to allow a customer to calculate how much they would be paying as a result of the fuel adjustment clause, and that Order did not specify the date on which the fuel adjustment clause would begin to apply to fuel consumed by Aquila customers. Aquila even had difficulty interpreting the criteria set forth in the Commission's order, as evidenced by Aquila's repeated submission of rate schedules to the Commission that were deemed not to comply with the order. Likewise, the

Commission's May 31 and June 14 Orders rejecting Aquila's proposed fuel adjustment clause tariffs did not reference a start date for fuel adjustments to begin. Until the rate schedules were actually adopted by the Commission, Aquila's customers had no means of calculating how much, if anything, their electrical use would cost them by way of the theoretical fuel adjustment clause or any notice of when such a fuel adjustment clause would begin to apply.

The applicable tariffs containing the fuel adjustment clause were not approved by the Commission until June 29 and did not become effective per the Commission's order until July 5th. Thus, any adjustment to the cost of electricity based on electricity that had already been consumed by Aquila customers prior to the effective date clearly constitutes retroactive ratemaking.[5]

In rendering its opinion, the Commission wholly disregards the applicable statutory language, the filed rate doctrine, and the prohibition on retroactive ratemaking and, instead, focuses on the language of its own regulations, which provide that a "[t]rue-up year [the period for which a company may accumulate costs for a fuel adjustment clause] means the twelve (12)–month period beginning on the first day of the calendar month following the effective date of the commission order approving a [Rate Adjustment Mechanism] unless the effective date is the on the first day of the calendar month." 4 CSR 240–3.161(1)(G). After finding this regulation ambiguous as to which of its orders approved the rate adjustment mechanism, the Commission concluded that the actual approval of the rate schedules utilizing the fuel adjustment clause was merely a ministerial act and that its May 17 order, in which it generally concluded that a fuel adjustment clause for Aquila would be appropriate, established the relevant date for determining when a rate adjustment mechanism was approved and the true-up year begins to run. Nothing in the Commission's Order even attempts to justify its disregard of the applicable statutory language and the prohibition on retroactive ratemaking, and this Court has found no authority, statutory or otherwise, authorizing the Commission to do so.

For the foregoing reasons, the judgment of the circuit court affirming the Commission's Order is reversed, and the cause is remanded to the circuit court with directions to remand to the Commission for further proceedings consistent with this opinion.[6]

All concur.

---

5. Indeed, Aquila held this same view of the law through December 2007. In its May 30, 2007 Response to Staff's Recommendation to Reject Tariff Sheets, Aquila stated:

> If the Commission fails to approve tariff sheets that authorize Aquila to implement its FAC on or before June 1, 2007, the Company will be prohibited from accumulating and eventually collecting from customers fuel and purchased power costs incurred to provide service to customers for the entire month of June and continuing thereafter until such times as tariff sheets implementing the FAC are approved.

In its June 18, 2007 Motion for Expedited Treatment, Aquila stated, "If the revised sheets are not made effective on or before June 30, 2007, Aquila may be denied recovery of more than $11 million in fuel and purchased power costs in the month of July 2007, alone." In its June 29, 2007 Request for Reconsideration, Aquila pleaded:

> Unless the order approving the FAC tariff sheets bears an effective date of Sunday July 1, 2007 (or an earlier date), Aquila risks losing the ability to recover its fuel costs for the month of July. *See* 4 CSR 240–20.090(2)(I). Accordingly, Aquila respectfully requests that the Commission reconsider its Order Granting Expedited Treatment and Approving Tariff Sheets, and, on this same date, issue a new order approving the tariff sheets, effective Sunday, July 1, 2007.

---

6. Having reached this conclusion, we need not address the Consumers' second point on appeal.