## STATE ex rel. AG PROCESSING, et al., Appellant,

v.

## PUBLIC SERVICE COMMISSION, et al., Respondent.

### Nos. WD 71986, WD 71987.

Missouri Court of Appeals, Western District.

March 1, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 2011.

Application for Transfer Denied June 28, 2011.

---

David L. Woodsmall, Esq., Lewis R. Mills, JR., Esq., Jefferson City, MO, for appellant.

Steven C. Reed, Esq., Samuel Ritchie, Esq., Jefferson City, MO, Karl Zobrist, Esq., Roger W. Steiner, Esq., Kansas City, MO, for respondent.

Before: JOSEPH M. ELLIS, P.J., and ALOK AHUJA and KAREN KING MITCHELL, JJ.

ALOK AHUJA, Judge.

KCP & L Greater Missouri Operations Co. ("KCP & L")[1] filed a tariff on December 30, 2008, which sought to adjust its rates pursuant to a Fuel Adjustment Clause which had previously been approved by the Public Service Commission (the "PSC" or "Commission"). The PSC approved the rate-adjustment tariff. Appellants AG Processing, Inc. and Sedalia Industrial Energy Users' Association petitioned the circuit court for review of the Commission order; Appellant Office of Public Counsel intervened. The circuit court rejected the Appellants' challenges to the Commission's order. We conclude that forward-looking rate adjustments approved by the PSC pursuant to a previously adopted Fuel Adjustment Clause do not constitute unlawful retroactive ratemaking, and accordingly affirm.

**Factual Background**

KCP & L is a regulated electrical corporation subject to the Commission's jurisdiction. In 2007, the Commission conducted a rate case for KCP & L. As part of its May 17, 2007 Report and Order resolving that rate case, the Commission authorized KCP & L to implement a Fuel Adjustment Clause pursuant to § 386.266,[2] and the Commission's implementing regulation, 4 C.S.R. 240–20.090.

The Fuel Adjustment Clause ultimately approved[3] permits KCP & L to pass through to customers 95% of the amount by which its fuel and purchased power costs exceed (or fall below) the amount reflected in KCP & L's base rates. The Commission concluded that this 95% pass-through would protect KCP & L "from extreme fluctuations in fuel and purchased power cost, yet retain a significant incentive to take all reasonable actions to keep its fuel and purchased power costs as low as possible, and still have an opportunity to earn a fair return on its investment."

Under the Fuel Adjustment Clause, KCP & L calculates its actual energy costs during two six-month "Accumulation Periods," one running from June through November, and the other from December through May. After each Accumulation Period ends, KCP & L may file tariff sheets adjusting its rates to reflect any difference between the energy costs it actually incurred during the Accumulation Period, and the energy costs included in its base rates. Upon Commission approval, KCP & L can implement the revised rates, which allow it to collect (or refund) the difference between its actual energy costs and those forecast at the time of its rate case. The additional collection (or refund) occurs over a twelve-month "Recovery Period," one commencing in March for costs incurred in the first Accumulation Period

1. KCP & L was formerly known as Aquila, Inc. It changed its name after being acquired in 2008 by Great Plains Energy, Inc., the parent of Kansas City Power & Light Company.

2. Statutory references are to the RSMo 2000, as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

3. The procedural history leading to the Commission's ultimate approval of KCP & L's Fuel Adjustment Clause is recounted in *State ex rel. AG Processing, Inc. v. Public Service Commission*, 311 S.W.3d 361, 363–64 (Mo. App. W.D.2010).

(June–November) and one in September for costs incurred in the second Accumulation Period (December–May). *See State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 311 S.W.3d 361, 363–64 (Mo.App. W.D.2010) (describing operation of KCP & L's Fuel Adjustment Clause).

The present Appellants also sought judicial review of the Commission's May 2007 Report and Order entered in KCP & L's general rate case. That case was ultimately appealed to this Court; we affirmed. *State ex rel. Aquila, Inc. v. Pub. Serv. Comm'n*, 326 S.W.3d 20 (Mo.App. W.D. 2010).[4] Notably, in that earlier proceeding the Appellants asserted no challenge to the Fuel Adjustment Clause adopted by KCP & L pursuant to the Commission's May 2007 Report and Order.

As authorized by its Fuel Adjustment Clause, KCP & L filed a tariff sheet on December 30, 2008, to adjust its rates to reflect the higher-than-expected fuel and purchased power costs it experienced during the six-month Accumulation Period running from June 1 through November 30, 2008. The rate adjustment would become effective March 1, 2009.

On February 9, 2009, AG Processing and Sedalia Industrial Energy Users' Association filed a Motion to Reject Tariffs. They argued that KCP & L's proposed tariff constituted unconstitutional retroactive ratemaking to the extent it sought to recover, on a dollar-for-dollar basis, an under-recovery of energy costs which KCP & L experienced during a prior period. On February 19, 2009, the Commission issued its Order Denying Motion to Reject, and Approving Tariff to Adjust Rate

Schedules for Fuel Adjustment Clause. Subsequently, AG Processing and Sedalia Industrial Energy Users' Association filed an application for rehearing, which the Commission denied on March 11, 2009. They then sought a writ of review in the Circuit Court of Cole County. The Office of Public Counsel intervened before the circuit court. The court affirmed the Commission's Order. AG Processing, the Sedalia Industrial Energy Users' Association, and the Office of Public Counsel now appeal.

### Standard of Review

"On appeal from a decision by the circuit court in a case adjudicated by the PSC, the appellate court reviews the decision of the PSC, not the judgment of the circuit court." "The role of this court in reviewing the decision of the PSC is to determine whether the PSC's order is lawful and reasonable." "The lawfulness of a PSC decision is determined from the statutory authority of the PSC." "In determining whether the PSC's decision was lawful, this court exercises unrestricted, independent judgment and must correct erroneous interpretations of law."

*State ex rel. AG Processing*, 311 S.W.3d at 365 (citations omitted).

### Analysis

In their sole Point Relied On, the Appellants contend that the rate adjustment KCP & L obtained by operation of its Fuel Adjustment Clause constitutes unlawful retroactive ratemaking. We disagree.[5]

4. We initially issued our decision in the earlier judicial review proceeding on April 20, 2010. On August 31, 2010, the Missouri Supreme Court granted transfer (No. SC90982). Following oral argument, however, the Supreme Court retransferred the case here in an

order entered on December 22, 2010. We readopted our earlier opinion on January 4, 2011.

5. At the outset, we observe that Appellants' retroactive ratemaking argument is based

Section 386.266.1 authorizes the adoption of fuel adjustment clauses like KCP & L's. It provides:

> [A]ny electrical corporation may make an application to the commission to approve rate schedules [6] authorizing an interim energy charge, or periodic rate adjustments outside of general rate proceedings to reflect increases and decreases in its prudently incurred fuel and purchased-power costs. . . .

In *State ex rel. AG Processing*, we recently described the retroactive ratemaking doctrine on which the Appellants' present argument depends:

> Section 393.140(11) provides that "[n]o corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedules filed and in effect at the time." "The filed rate doctrine . . . precludes a regulated utility from collecting any rates other than those properly filed with the appropriate regulatory agency." "This aspect of the filed rate doctrine constitutes a rule against retroactive ratemaking or retroactive rate alteration." Retroactive rate-making is defined as "the setting of rates which permit a utility to recover past losses or which require it to refund past excess profits collected under a rate that did not perfectly match expenses plus rate-of-return with the rate actually established." *State ex rel. Util. Con-*

*sumers' Council of Mo.[, Inc. v. Pub. Serv. Comm'n* ], 585 S.W.2d [41,] 59 [ (Mo. banc 1979) ]. The filed rate doctrine's rule against retroactive ratemaking has an "underlying policy of predictability, meaning that if a utility is bound by the rates which it properly filed with the appropriate regulatory agency, then its customers will know prior to purchase what rates are being charged, and can therefore make economic or business plans or adjustments in response." In other words, the approved tariffs are to "provide advance notice to customers of prospective charges, allowing the customers to plan accordingly."

311 S.W.3d at 365 (footnote, other citations, and emphasis omitted).

Appellants' retroactive ratemaking arguments must fail under the Missouri Supreme Court's decision in *Utility Consumers' Council ("UCCM")*, 585 S.W.2d 41. *UCCM* held that fuel adjustment clauses approved by the Commission in 1974 and 1976 were unlawful, because such clauses were not statutorily authorized at that time. *Id.* at 57. To the contrary, the statutory scheme then in place contemplated that the PSC would authorize fixed rates for utility service, subject to only limited, explicitly identified exceptions. *Id.* As Appellants acknowledge, *UCCM's* specific statutory holding is no longer relevant, because in 2005 the General Assembly enacted § 386.266, *see* S.B. 179, 2005 Mo. Laws 1069, and expressly authorized

---

upon features of KCP & L's Fuel Adjustment Clause which were in place at the time of the judicial review proceedings concerning the PSC's May 2007 Report and Order, and from all that we can determine the Appellants could have made the identical argument in that earlier proceeding. Yet in the prior case the Appellants made no challenge to the Fuel Adjustment Clause, and we affirmed the Commission's Report and Order, as well as the tariff compliance orders which actually ap-

proved KCP & L's tariff sheets (including the tariff sheet adopting the Fuel Adjustment Clause). Neither the PSC nor KCP & L argue, however, that Appellants are precluded from raising their retroactive ratemaking argument now.

6. "Tariff" and "rate schedule" are synonymous in this context. *State ex rel. AG Processing*, 311 S.W.3d at 364 n. 3.

the Commission to approve fuel adjustment clauses like the one at issue here.

■ Although *UCCM* held that fuel adjustment clauses approved by the Commission in 1974 and 1976 were unlawful under the statutory scheme then in place, the Supreme Court explicitly recognized that the General Assembly *could* authorize such clauses in the future:

> If the legislature wishes to approve automatic adjustment clauses, it can of course do so by amendment of the statutes, and set up appropriate statutory checks, safeguards, and mechanisms for public participation.

*Id.* at 57. The Supreme Court clearly understood that the "automatic adjustment clauses" which the legislature could authorize would provide for the recovery of past energy costs which were not adequately reflected in prior established rates. As the Court explained,

> A fuel adjustment clause (FAC), once authorized by the commission as a part of the utility's rate structure, *enables the utility to pass on to the consumer any increase (or decrease) in the cost of fuel automatically* and without any need for further consideration of compensatory decreases (or increases) in other operating expenses.

*Id.* at 49 (emphasis added). Later, the Court observed that fuel adjustment clauses enabled excess energy costs to "be *fully and automatically passed on* to the consumer." *Id.* (emphasis added).

Thus *UCCM* contemplated that the legislature could authorize the PSC to permit utilities to adopt fuel adjustment clauses which would allow those utilities "to pass on to the consumer," "fully and automatically," "any increase (or decrease) in the cost of fuel" which was not adequately addressed in the utility's existing base rates. The General Assembly accepted the Supreme Court's invitation by adopting § 386.266, which authorizes tariff provisions permitting rate adjustments outside of a rate case "to reflect increases and decreases in [an electric utility's] prudently incurred fuel and purchased-power costs." § 386.266.1. The statement that such rate adjustments could "reflect" increases in the utility's energy costs implies that the utility would be permitted to fully recover any increased costs. *See* Webster's Third New Int'l Dictionary 1908 (unabridged ed.1993) ("reflect" defined as "to give back or exhibit as an image, likeness, or outline: reproduce or show as a mirror does").

By specifically stating that the legislature could authorize fuel adjustment clauses like the one adopted by KCP & L here, the Supreme Court in *UCCM* presumably contemplated that such clauses would not themselves violate the retroactive rate-making doctrine. The Court's description of the retroactive ratemaking doctrine in *UCCM* also suggests that a properly authorized fuel adjustment clause would not be unlawful. *UCCM* stated that, under the retroactive ratemaking doctrine, the PSC "may not ... redetermine rates already established and paid without depriving the utility (or the consumer if the rates were originally too low) of his property without due process." 585 S.W.2d at 58.[7] "Past expenses ... cannot be used to set future rates to recover for past losses due

7. Appellants seize on the quoted statement to argue that the retroactive ratemaking doctrine is based in constitutional principles, and that the General Assembly is therefore powerless to recognize exceptions to the doctrine, or modify or abrogate it. Given our conclusion that KCP & L's Fuel Adjustment Clause is fully consistent with retroactive ratemaking principles, we need not decide whether the doctrine is of constitutional or merely statutory origin.

to imperfect matching of rates with expenses." *Id.* at 59. The Court held that the PSC had violated the retroactive ratemaking doctrine by permitting the implementation of a surcharge (independent of the 1974 and 1976 fuel adjustment clauses) which "enabled the utilities to collect monies not collectible under the rate filed at the time the expenses intended to be recoverable . . . were incurred." *Id.*

■ Thus, under *UCCM*, a utility is limited to recovery of costs which were recoverable under "the rate" in effect at the time the costs were incurred. We believe "the rate" in effect at a particular time, as that term is used in *UCCM*'s description of the retroactive ratemaking doctrine, includes any fuel adjustment clause then in effect. As *UCCM* explained:

[A]lthough the FAC may not itself be a rate, by approval of an FAC in a utility's rate schedule, the commission in advance approves any increase (or decrease) in rates which will automatically result through application of the FAC if the price of fuel to the utility increases or decreases. *It would exalt form over substance to say that approval of an FAC is proper because the FAC is merely a "rule relating to a rate" and not a rate itself,* where the effect of such approval is to permit increases in rates in a manner not provided by the statutes. It would also come at least dangerously close to abdication by the commission of its power to set just and reasonable rates, for the commission has determined in advance that any fuel charge made in accordance with the prescribed formula will be proper without regard to whether, in light of other cost factors, the overall charge is reasonable.

*Id.* at 56–57 (emphasis added).

*UCCM*'s discussion of the appropriate remedy in that case also suggests that the recovery of excess energy costs incurred in prior periods under the 1974 and 1976 fuel adjustment clauses did not constitute prohibited retroactive ratemaking. In *UCCM*, the PSC had approved recovery of excess fuel costs, on a forward-looking basis, under both the 1974 and 1976 fuel adjustment clauses; it had *also* permitted utilities to implement an after-the-fact "surcharge," to reflect excess energy costs incurred during a gap between the effective dates of the 1974 and 1976 fuel adjustment clauses. *Id.* at 46. The Office of Public Counsel argued in *UCCM* that the monies collected *both* under the (invalid) 1974 and 1976 fuel adjustment clauses, *and* through the surcharge, should be refunded to consumers. The Supreme Court agreed that refund of amounts collected under the surcharge was appropriate; the Court refused, however, to order the refund of monies collected under the fuel adjustment clauses themselves. With respect to the surcharge, the Court explained:

To permit [utilities] to collect additional amounts simply because they had additional past expenses *not covered by either [fuel-adjustment] clause* is retroactive rate making, i.e., the setting of rates which permit a utility to recover past losses or which require it to refund past excess profits collected under a rate that did not perfectly match expenses plus rate-of-return with the rate actually established. . . .

Since the surcharge thus enabled the utilities to collect *monies not collectible under the rate filed at the time* the expenses intended to be recoverable under the surcharge were incurred, the utilities have no vested right in the monies collected. *They were not only collected under an established rate which was later determined to have been beyond the authority of the commission to allow, as in the case of the FAC,* but were also an Additional recovery to that

which had been allowed under the rates in force during the relevant period. The result was to require consumers to pay monies which should not have been paid. *Id.* at 59 (emphasis added). Thus, the Court held that the monies collected through the surcharge mechanism could be refunded to consumers, because the collection of the surcharge itself constituted retroactive ratemaking. In contrast, the Court held that monies collected under the fuel adjustment clauses could not be refunded, because neither the PSC nor the courts are permitted to "redetermine rates already established and paid without depriving the utility (or the consumer if the rates were originally too low) of his property without due process." *Id.* at 58.

Thus, *UCCM* makes clear that fuel adjustment clauses are part of the "established rate" for utility service if they are in effect at the time excess energy costs are incurred, and that it does not violate the retroactive ratemaking doctrine for a fuel adjustment clause to permit a utility to recover excess energy costs incurred at a time when the fuel adjustment clause was in effect. Applying this principle, we held in *State ex rel. AG Processing, Inc. v. Public Service Commission,* 311 S.W.3d 361 (Mo.App. W.D.2010), that KCPL could not employ its Fuel Adjustment Clause to recover excess energy costs incurred before the Fuel Adjustment Clause itself became effective. We held that "[o]nly costs incurred after the effective date of an appropriate tariff may be recovered under a fuel adjustment clause." *Id.* at 366. In contrast, "any adjustment to the cost of electricity based on electricity that had already been consumed by [KCPL] customers prior to the effective date [of the Fuel Adjustment Clause] clearly constitutes retroactive ratemaking." *Id.* at 367.

Under *UCCM,* KCPL's implementation of its Fuel Adjustment Clause, in order to recover excess energy costs incurred in prior periods during which the Fuel Adjustment Clause was in effect, did not violate the retroactive ratemaking doctrine. An additional consideration supports our rejection of the Appellants' retroactive ratemaking argument: KCPL's rate adjustment applies only prospectively, to electrical service to be provided to customers *after* Commission approval of the rate adjustment. The rate adjustment does not modify or recalculate the rate to be charged for electricity provided to customers *before* the rate adjustment was approved. In prior cases, this Court has rejected claims that measures to recoup previously incurred costs constitute retroactive ratemaking, when the recoupment measures operate prospectively, and do not alter the cost of utility services previously provided to consumers. *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n,* 210 S.W.3d 330, 336 (Mo.App. W.D.2006) ("This is not retroactive ratemaking, because the past rates are not being changed so that more money can be collected from services that have already been provided; instead, the past costs are being considered to set rates to be charged in the future."); *State ex rel. Midwest Gas Users' Ass'n v. Pub. Serv. Comm'n,* 976 S.W.2d 470, 481 (Mo.App. W.D.1998) ("The adjustments permitted under [the adjustment clauses] are applied only to future customers on future bills. The companies are not allowed to adjust the amount charged to past customers either up or down."). This principle is equally applicable here.

## Conclusion

The Public Service Commission did not engage in retroactive ratemaking by approving an adjustment to KCPL's forward-looking rates to reflect excess energy costs KCPL incurred during a prior period in which its Fuel Adjustment Clause was in effect. The Commission's Order Denying

Motion to Reject, and Approving Tariff Sheet to Adjust Rate Schedules for Fuel Adjustment Clause, is affirmed.

All concur.