AG PROCESSING, INC., a Cooperative; Missouri Public Service Commission, Office of Public Counsel, **Respondents,**

v.

## KCP & L GREATER MISSOURI OPERATIONS COMPANY, Appellant.

### No. WD 74601.

Missouri Court of Appeals, Western District.

Oct. 23, 2012.

Rehearing Denied Nov. 20, 2012.

---

Jennifer L. Heintz, Lewis R. Mills, Stuart W. Conrad and David L. Woodsmall, Jefferson City, MO, for appellant.

Karl Zobrist, Lisa Gilbreath and Roger Steiner, Kansas City, MO, for respondent.

Before Division One: JAMES M. SMART, Presiding Judge, LISA WHITE HARDWICK and GARY D. WITT, Judges.

LISA WHITE HARDWICK, Judge.

This appeal arises from the Missouri Public Service Commission's ("Commission") order requiring KCP & L Greater Missouri Operations Company ("KCP & L") to pay customer refunds because it failed to prove that a natural gas hedging program was operated prudently. KCP & L contends the order is unlawful because the Commission incorrectly applied the burden of proof.[1] We agree. For reasons

---

**1.** Although KCP & L brings three points on appeal, we only address Point II (challenging the burden of proof) because it is dispositive. In Point I, KCP & L contends the record does

explained herein, we reverse the Commission's order and remand the cause for further consideration.

### FACTUAL AND PROCEDURAL HISTORY

KCP & L is the successor company to Aquila, Inc., which provided industrial steam utility service from its Lake Road Generating Station in St. Joseph. The steam was produced primarily from a coal-fired boiler, but natural gas was also used as a fuel source. Ag Processing, Inc. was one of Aquila's five industrial steam customers served by the Lake Road Generating Station.

In 2005, Aquila initiated a ratemaking case before the Commission, seeking a rate increase for its steam service in St. Joseph. Pursuant to a negotiated settlement of the case, the Commission approved a stipulation that authorized Aquila to implement a quarterly cost adjustment ("QCA") and a price hedging program for fuel costs. The stipulation also established the following procedures for prudence reviews of Aquila's fuel purchase decisions:

8.6. In consideration of the sharing provisions of the fuel rate mechanism, and the intent to rely on an alignment of customer and Company interests in efficient operations, a two-step approach to prudence review will be followed. In step one the Staff will review to ascertain:

8.6.1. that the concept of aligning of company and customer interests is working as intended; and,

8.6.2. that no significant level of imprudent costs is apparent.

8.7. ... In consideration of Step one results, the Staff may proceed with a full prudence review, if deemed necessary....

8.8. Any Aquila steam customer or group of steam customers in the L & P service area may make application to initiate a complaint for the purpose of pursuing a prudence review by use of the existing complaint process. The application for the complaint and the complaint proceeding will not be prejudiced by the absence of a step two prudence review by Staff.

On January 28, 2010, Ag Processing filed a complaint alleging that Aquila imprudently operated its hedging program by purchasing substantially more gas than it actually burned, which resulted in Aquila's steam customers being "excessively charged." The complaint was filed against KCP & L as the successor to Aquila. Ag Processing sought an order requiring KCP & L to refund the costs of the hedging program that were paid by Aquila's five industrial steam customers.

Ag Processing initially filed its complaint in two cases involving Aquila's proposed rate adjustments under the QCA. The Commission separated Ag Processing's complaint from the rate adjustment cases and docketed it as an independent case.

After an evidentiary hearing, the Commission issued a Report and Order, which explained the burden of proof on the complaint as follows: "[A] utility's expenditures are presumed to be prudently incurred, but, if some other participant in the proceeding creates a serious doubt as [to] the prudence of the expenditure, then the utility has the burden of dispelling

---

not support the Commission's finding that the natural gas hedging program was implemented imprudently. In Point III, KCP & L contends the Commission erred in calculating damages based on a refund of the net operat-ing cost of the natural gas hedging program to all customers. In light of our decision to reverse and remand on Point II, we need not address these remaining points.

those doubts and proving the questioned expenditure to have been prudent." The Commission determined that Ag Processing raised serious doubts as to the prudence of Aquila's hedging program and, thus, the initial presumption of prudence was overcome. The Commission further found KCP & L failed to meet "its burden of proving that [Aquila] operated its hedging program in a prudent manner." Based on this finding, the Commission ordered KCP & L to refund the net cost of operating Aquila's hedging program, in the amount of $931,968 for 2006 and $1,953,488 for 2007, to all five industrial steam customers. KCP & L appeals the Commission's order.

## STANDARD OF REVIEW

■■■ On appellate review, we must determine whether the Commission's order is lawful and reasonable. *State ex rel. Associated Natural Gas Co. v. Pub. Serv. Comm'n,* 954 S.W.2d 520, 528 (Mo.App. 1997); § 386.430.[2] In considering whether the order was lawful, "this court exercises unrestricted, independent judgment and must correct erroneous interpretations of the law." *Associated Natural Gas,* 954 S.W.2d at 528. "As to matters of reasonableness, this court determines whether the [Commission's] decision was supported by substantial and competent evidence on the whole record, whether the decision was arbitrary, capricious, or unreasonable, or whether the [Commission] abused its discretion." *Id.*

## ANALYSIS

KCP & L contends the Commission's order is unlawful because the Commission

improperly assigned KCP & L the burden of proving that Aquila operated its hedging program prudently. Citing *State ex rel. GS Technologies Operating Co., Inc. v. Public Service Commission,* 116 S.W.3d 680 (Mo.App.2003), KCP & L argues that Ag Processing, as the complainant, should have had the burden of proof on the prudence issue.

In *GS Technologies,* a steel manufacturing company ("GST") purchased its electricity from Kansas City Power & Light Company ("KCPL"). GST initiated a complaint under Section 386.390.1,[3] alleging that KCPL acted imprudently and that such imprudence caused an explosion at one of KCPL's generating units, "which, in turn, resulted in KCPL's providing inadequate and unreliable service and charging GST unjust and unreasonable rates." *Id.* at 694. In holding that the Commission properly placed the burden on GST to prove KCPL's imprudence, our court explained:

> In cases where "a complainant alleges that a regulated utility is violating the law, its own tariff, or is otherwise engaging in unjust or unreasonable actions," the Commission has determined that "the burden of proof at hearing rests with complainant." This court has affirmed placing the burden of proof on the complainant in such cases, because the burden of proof properly rests on the party asserting the affirmative of an issue. Applying this principle, because GST was asserting the affirmative on the issue of KCPL's imprudence, the burden of proof rested on GST.

2. All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2011, unless otherwise noted.

3. Section 386.390.1 provides, in pertinent part: "Complaint may be made by ... any corporation or person ... setting forth any

act or thing done or omitted to be done by ... [a] public utility, including any ... charge heretofore established or fixed by ... [a] public utility, in violation, or claimed to be in violation, of any provision of law, or of any rule or order or decision of the commission."

*Id.* at 693 (internal citations omitted) (quoting *Margulis v. Union Elec. Co.,* 30 Mo.P.S.C. (N.S.) 517, 523 (1991)).

Ag Processing and the Commission argue, however, that, under *Associated Natural Gas,* the Commission properly assigned the burden of proof to KCP & L. In *Associated Natural Gas,* a utility initiated a proceeding before the Commission seeking to pass costs it incurred in obtaining gas on to its customers. 954 S.W.2d at 522–23. On appeal from that proceeding, our court explained that the utility or "applicant" has the burden of proving the prudence of any costs incurred:

> [A] utility's costs are presumed to be prudently incurred.... However, the presumption does not survive "a showing of inefficiency or improvidence."
>
> ... [W]here some other participant in the proceeding creates a serious doubt as to the prudence of an expenditure, then the applicant has the burden of dispelling these doubts and proving the questioned expenditure to have been prudent.

*Id.* at 528–29 (alterations in original) (quoting *Matter of Union Electric,* 27 Mo.P.S.C (N.S.) 183, 193 (1985)).

In this case, the Commission acknowledged that, "[i]n form, this is a complaint brought by [Ag Processing] against [KCP & L]," and, therefore, "[n]ormally ... the burden of proof would be on [Ag Processing], the complainant, as the party asserting the affirmative on the issue of the utility's imprudence." Nevertheless, the Commission went on to find that "this case is more complicated than a straightforward complaint," because of the approved stipulation that resolved Aquila's 2005 steam rate case. Section 8.7 of the stipulation provides that the "Staff may proceed with a full prudence review," and Section 8.8 provides that any steam customer can initiate a complaint to pursue a prudence review "by use of the existing complaint process." The Commission interpreted these provisions as allowing "any Aquila steam customer, including [Ag Processing], to file a complaint to initiate the second-step full prudence review, even if Staff chooses not pursue such a review." Thus, the Commission concluded that Ag Processing's complaint was merely an extension of the Staff's full prudence review in the ratemaking case, wherein the utility retained the burden of proof.

As pointed out by Ag Processing, the Commission's interpretation of Sections 8.7 and 8.8 is contrary to the conclusion the Commission reached in an earlier order in this case, in which it denied a motion to dismiss:

> The tariff contemplates that a "full prudence review" is one that is conducted by Staff. The tariff goes on to state that any customer may initiate a complaint to pursue "a prudence review" and that the customer will not be prejudiced by the lack of a "full prudence review." *The Commission interprets these provisions as clearly setting out two different types of prudence reviews. One that may be initiated by Staff ... and one that may be initiated by a customer through the complaint process.*

(Emphasis added).

We agree with the Commission's earlier interpretation. By expressly providing that "[t]he application for the complaint and the complaint proceeding will not be prejudiced by the absence of a step two prudence review by Staff," the stipulation indicates that Sections 8.7 and 8.8 provide for two different types of prudence reviews. Section 8.7 sets out a prudence review initiated by Staff, where the burden is on the utility to prove its costs were prudently incurred. Section 8.8, on the other hand, provides for a "prudence review by use of the existing complaint pro-

cess," and, under the existing complaint process, the burden is on the complainant to prove that the utility acted imprudently. There is no language in the Stipulation that alters the normal burden of proof to be applied in cases initiated by a complaint.

Ag Processing and the Commission argue that the instant case is more similar to *Associated Natural Gas* than *GS Technologies* because the claim of imprudence in *GS Technologies* concerned an explosion, while *Associated Natural Gas* dealt with the prudence of incurred costs. We disagree. First, at their core, *GS Technologies* and this case address the same type of claim: a public utility's imprudent decisions led to its customers being charged unreasonable rates. In *GS Technologies*, "GST alleged that KCPL's imprudence caused [an] explosion, which in turn resulted in KCPL[] ... charging GST unjust and unreasonable rates." 116 S.W.3d at 693. Here, Ag Processing alleges that Aquila's imprudence caused it to hedge much more gas than it actually burned, which in turn resulted in Aquila charging unreasonable rates.

Second, Ag Processing and the Commission overlook the fact that our decision in *GS Technologies* was premised on the procedure through which the prudence review was initiated—not on the particular claims of imprudence. We expressly distinguished the case from *Associated Natural Gas* by explaining:

> *Associated Natural Gas* was a ratemaking case initiated by the utility, seeking to pass on costs to its customers....
>
> In [*GS Technologies*], [the utility] did not initiate th[e] action to increase its rates, thereby putting the prudence of its expenditures at issue. Rather, [the customer] initiated th[e] complaint.... [The customer] put [the utility]'s imprudence at issue, therefore ... [the cus-

tomer] should have the burden of proving that issue.

*Id.* at 694.

Likewise, Ag Processing initiated a complaint that challenged the prudence of Aquila's expenditures on the natural gas hedging program. Although the hedging program resulted from an approved stipulation in a ratemaking case, the stipulation clearly provided that customer complaints about the prudence of the program would be handled through the existing complaint process. In recognition of that provision, the Commission separated Ag Processing's complaint from the ratemaking cases and docketed it as an independent case. Ag Processing put Aquila's imprudence at issue and, therefore, Ag Processing should have had the burden of proving that claim. The Commission erred in placing the burden of proof on KCP & L and in ordering KCP & L to pay customer refunds because it failed to meet that burden. Granting relief without requiring Ag Processing to prove the allegations in its complaint is reversible error. See, generally, *Reed v. Reed*, 48 S.W.3d 634, 642 (Mo.App.2001); *Askins v. James*, 642 S.W.2d 383, 386 (Mo. App.1982) (reversal required when trial court makes erroneous declaration of burden of proof). Accordingly, we reverse the order and remand the cause for further consideration under the appropriate burden of proof.

CONCLUSION

The Commission's Report and Order is reversed, and the cause is remanded for further consideration consistent with this opinion.

ALL CONCUR.