

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| AG PROCESSING, INC., | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | |
| KCP&L GREATER MISSOURI | ) | WD76353 |
| OPERATIONS COMPANY, | ) | FILED: March 25, 2014 |
| and | ) | |
| MISSOURI PUBLIC SERVICE | ) | |
| COMMISSION, | ) | |
| Respondents, | ) | |
| TRIUMPH FOODS, LLC, | ) | |
| Intervenor-Respondent. | ) | |

## APPEAL FROM THE PUBLIC SERVICE COMMISSION

### BEFORE DIVISION THREE: GARY D. WITT, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND ALOK AHUJA, JUDGES

AG Processing, Inc. ("AGP") appeals from the Missouri Public Service

Commission's ("Commission") Order Regarding Remand in which it: (1) vacated a prior

report and order finding that KCP&L Greater Missouri Operations Company ("KCP&L")

had imprudently operated its hedging program and, as a result, was required to pay

AGP and other customers refunds; (2) ordered a temporary rate adjustment to return to

KCP&L the amount of the refunds; and (3) ordered that a separate complaint case that

AGP had initiated against KCP&L involving different allegations of imprudence be

consolidated with the present complaint case. AGP contends the Order Regarding

Remand is unlawful for several reasons. Because the Order Regarding Remand is not

a terminal and complete resolution of the two complaint cases it concerns, it is not a final and appealable administrative order. Therefore, we dismiss AGP's appeal.

<strong>FACTUAL AND PROCEDURAL HISTORY[1]</strong>

KCP&L is the successor company to Aquila, Inc., which provided industrial steam utility service from its Lake Road Generating Station in St. Joseph. The steam was produced primarily from a coal-fired boiler, but natural gas was also used as a fuel source. AGP was one of Aquila's five industrial steam customers served by the Lake Road Generating Station.

Aquila initiated a ratemaking case before the Commission in 2005, seeking a rate increase for its steam service in St. Joseph. Pursuant to a negotiated settlement of the case, the Commission approved a stipulation that authorized Aquila to implement a quarterly cost adjustment ("QCA") and a price hedging program for fuel costs. Gains and losses from the hedging program were passed through to customers through the use of the QCA.

In January 2010, AGP filed a complaint case ("2010 complaint case") alleging that Aquila was imprudent for initiating such a hedging program and that the program was imprudently designed and imprudently operated because Aquila purchased substantially more gas than it actually burned, which resulted in Aquila's steam customers being "excessively charged." The 2010 complaint case was filed against KCP&L as Aquila's successor. AGP sought an order requiring KCP&L to refund the costs of the hedging program that were paid by Aquila's five industrial steam customers.

---

[1] Several facts are adopted from this court's opinion in *AG Processing, Inc. v. KCP&L Greater Missouri Operations Co.,* 385 S.W.3d 511, 513-14 (Mo. App. 2012), without further citation.

After an evidentiary hearing, the Commission issued its report and order on September 28, 2011. In the report and order, the Commission found that it was not imprudent for Aquila to adopt a natural gas hedging program and that the hedging program was prudently designed. The Commission further found, however, that KCP&L had the burden of proving that Aquila operated the hedging program in a prudent manner and that it failed to meet that burden. As a result, the Commission concluded that the entire net cost of operating the natural gas price hedging program in 2006 and 2007 was imprudently incurred. Therefore, the Commission ordered that KCP&L refund the net cost of operating Aquila's natural gas hedging program, in the amount of $931,968 for 2006 and $1,953,488 for 2007, to its five industrial steam customers through the QCA.

KCP&L appealed the Commission's September 28, 2011 report and order to this court. In *AG Processing, Inc. v. KCP&L Greater Missouri Operations Co.*, 385 S.W.3d 511 (Mo. App. 2012), we reversed the Commission's decision, finding that the Commission erred by shifting the burden of proof to KCP&L and by ordering KCP&L to pay customer refunds because it failed to meet that burden. *Id.* at 516. We held that AGP, as the complainant who initiated the action, had the burden to prove its claims of imprudence regarding Aquila's expenditures on the natural gas hedging program. *Id.* Accordingly, we reversed the Commission's September 28, 2011 report and order and remanded the cause "for further consideration under the appropriate burden of proof." *Id.* While awaiting the issuance of our mandate, KCP&L completed the refunds to Aquila's steam customers pursuant to the Commission's September 28, 2011 report and order.

3

On remand, the Commission requested that the parties re-brief the case on the existing record but properly apply the preponderance of the evidence standard. In its reply to KCP&L's brief, AGP argued for the first time that, even if it failed to meet its burden of proof, Aquila's customers could not be compelled to return the refunded money to KCP&L as a matter of law. The Commission gave KCP&L and Staff an opportunity to respond to this new legal argument.

Following the parties' re-briefing, the Commission reviewed its September 28, 2011 report and order and issued its Order Regarding Remand on February 27, 2013. In its Order Regarding Remand, the Commission determined that it would vacate the September 28, 2011 report and order in its entirety as a matter of due process. The Commission explained that, when AGP initially presented its case, it was operating under the assumption that the burden of proof would shift to KCP&L if AGP raised "serious doubt" as to KCP&L's adoption and management of the hedging program. Because this court determined in *AG Processing*, 385 S.W.3d 511, that the burden does not shift to KCP&L but remains with AGP, the Commission decided that, to ensure due process, it would reopen the record to take additional evidence now that all of the parties were fully informed as to the proper burden of proof and who bears that burden.

Additionally, the Commission found that it erred in the September 28, 2011 report and order when it ordered the refunds to Aquila's customers because there was insufficient evidence as to how much net hedging costs Aquila would have incurred if it had properly forecasted the amount of natural gas it needed to purchase. Because there was no evidence from which to determine the correct amount of costs to be passed through to each of the customers, there was no evidence to determine the

4

correct amount of the refunds. Consequently, the Commission found that it needed to make a temporary rate adjustment under Section 386.520.2(3).[2] The Commission relied upon Section 386.520.2(3)'s provision that, if an unlawful or unreasonable decision of the Commission results in a decrease in the public utility's rates and charges in a greater amount than what would have occurred had the Commission not erred, the Commission shall be instructed on remand to approve temporary rate adjustments designed to allow the utility to recover from its customers the amounts it should have collected plus interest.

Section 386.520.2(3) requires that such temporary rate adjustments be made no more than 120 days from the issuance of the court of appeals' mandate. The Commission determined, however, that it did not have sufficient time to conduct a new hearing and render a decision before the expiration of the 120 days. Therefore, the Commission decided to order a temporary rate adjustment during the pendency of the new hearing.

The Commission believed that this temporary rate adjustment would not prejudice any party because the QCA is a two-way cost adjustment mechanism. The Commission explained that, if it is later determined that Aquila's actions were, in fact, imprudent, then any amounts returned to KCP&L that should have been retained by the customers could simply be flowed back through the QCA to the customers. The Commission ordered KCP&L to file a new QCA tariff that initiated the return of the improvidently-ordered refunds to Aquila's steam customers.

---

[2] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2013.

5

Also in its Order Regarding Remand, the Commission consolidated the 2010 complaint case with another complaint case that AGP had filed. This other complaint case ("2012 complaint case") raised allegations of imprudence in KCP&L's hedging program during the 2009 QCA period. The 2012 complaint case had been stayed by the Commission pending the outcome of the appeal concerning the 2010 complaint case.[3] The Commission directed the parties to coordinate the presentation of the evidence for both of the consolidated cases.

AGP filed an application for rehearing from the Commission's Order Regarding Remand. Additionally, AGP filed a motion for a stay and a motion for approval of a reconciliation. Before ruling on the motions, the Commission noted that its Order Regarding Remand was only an interlocutory, procedural order that was not final and did not dispose of either of the consolidated 2010 and 2012 complaint cases. Therefore, the Commission stated that the application for rehearing was incorrectly captioned and should be treated as a motion for reconsideration. Rule 4 CSR 240-2.160(2) allows a party to file a motion for reconsideration from procedural and interlocutory orders. The Commission then denied the motion for reconsideration and the motions for a stay and approval of a reconciliation. Subsequently, KCP&L filed new tariffs to implement the temporary rate adjustment ordered by the Commission in the Order Regarding Remand. The Commission took no further action on the tariffs, which went into effect on June 1, 2013.

---

[3] Triumph Foods, LLC, another of KCP&L's steam customers, intervened in the consolidated complaint cases. Before it intervened, Triumph Foods had no involvement in the 2010 complaint case.

AGP filed this appeal. While the appeal was pending, AGP filed two petitions for a writ of mandamus and a petition for a writ of prohibition, all of which we denied. AGP also moved for a stay of the Order Regarding Remand, which we denied.

### FINALITY OF ORDER REGARDING REMAND

The Commission has filed a motion to dismiss the appeal for lack of a final order. We took the motion with the case. In the motion, the Commission asserts that its Order Regarding Remand is an interlocutory order that addressed only procedural issues to guide the final disposition of the consolidated 2010 and 2012 complaint cases. Because it is not a final order, the Commission argues that it is not appealable. AGP contends the Order Regarding Remand is appealable because, by ordering AGP and the other steam customers to return the refunds to KCP&L through a temporary rate adjustment, the Commission implemented final and substantive rate changes.

Section 386.510 provides for appellate review of the Commission's "original order or decision or the order or decision on rehearing." While this statutory language does not limit appellate review to *final* orders or decisions, the Missouri Constitution does, as it provides for judicial review of "[a]ll *final* decisions, findings, rules and orders on any administrative officer or body." MO. CONST. art. V, § 18 (emphasis added); *State ex rel. Riverside Pipe Line Co. v. Pub. Serv. Comm'n*, 26 S.W.3d 396, 400 (Mo. App. 2000). Finality with regard to administrative orders occurs when "'the agency arrives at a terminal, complete resolution of the case before it.'" *City of Park Hills v. Pub. Serv. Comm'n*, 26 S.W.3d 401, 404 (Mo. App. 2000) (citation omitted). "An order lacks finality in this sense while it remains tentative, provisional, or contingent, subject to recall, revision or reconsideration by the issuing agency.'" *Id.* (citations omitted).

7

As its name suggests, the Order Regarding Remand constituted the Commission's response to our decision in *AG Processing*, 385 S.W.3d 511, which reversed and remanded the September 28, 2011 report and order for further reconsideration under the appropriate burden of proof. After discussing the factual and procedural history of the 2010 complaint case, our holding in *AG Processing*, and the correct preponderance of the evidence, prudence, and proof of harm standards to be applied in the case, the Commission determined that due process required it to vacate the September 28, 2011 report and order and reopen the record to take additional evidence. Because it was reopening the record in the 2010 complaint case, the Commission also decided, as a matter of administrative economy, to consolidate it with the 2012 complaint case, which had been stayed. The Commission directed the parties to coordinate the presentation of the evidence for both of the consolidated cases and to jointly file a proposed procedural schedule.

Based upon these provisions, it is clear that the Order Regarding Remand did not address, let alone resolve, the allegations of imprudence that AGP raised in the 2010 and 2012 complaint cases. All of the evidence had yet to be submitted in both cases. Indeed, at the time the Order Regarding Remand was issued, no evidence had been adduced in the 2012 complaint case. The Order Regarding Remand was simply a guide that explained how, in light of our reversal and remand of the 2010 complaint case, the Commission planned to proceed going forward to bring the 2010 and 2012 complaint cases to a final resolution.

The Commission's inclusion of an order directing the steam customers to return the refunds to KCP&L through the QCA did not transform the Order Regarding Remand

8

into a final order. The refunds were originally granted to the steam customers as relief after the Commission found that Aquila had imprudently operated its hedging program -- a finding that this court deemed erroneous on appeal and reversed and remanded for the Commission's further consideration. The Order Regarding Remand did not finally decide the issue of Aquila's imprudence; therefore, it did not resolve the issue of who, ultimately, was entitled to the refunded amounts. The Commission recognized this, as it stated that, if it determines after the new evidentiary hearing that Aquila's actions were imprudent and that it should not have ordered a return of the refunds, it will order KCP&L to give the returned amounts back to the customers through the QCA. [4] Thus, the Commission's decision to return the refunds is subject to recall or reconsideration and is not a final administrative order.

## CONCLUSION

We dismiss AGP's appeal of the Order Regarding Remand.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

---

[4] Because appellate jurisdiction is lacking, we express no view on the substantive correctness of the Commission's order requiring that KCP&L recoup the refunds previously paid to Aquila's steam customers pending final resolution of the 2010 complaint case.

9