

# In the
# Missouri Court of Appeals
## Western District

IN THE MATTER OF THE REQUEST
FOR AN INCREASE IN SEWER
OPERATING REVENUES OF
EMERALD POINTE UTILITY
COMPANY;

              **Respondent,**

PUBLIC SERVICE COMMISSION OF
MISSOURI,

              **Respondent,**

**v.**

OFFICE OF PUBLIC COUNSEL,

              **Appellant.**

**WD76996**

**OPINION FILED:**

**August 12, 2014**

### APPEAL FROM THE PUBLIC SERVICE COMMISSION

Before Division Two: Victor C. Howard, P.J.,
James Edward Welsh, and Anthony Rex Gabbert, JJ.

When Emerald Pointe Utility Company filed a request with the Missouri Public Service

Commission asking for an increase in its annual sewer and water system operating revenues, the

Office of Public Counsel alleged that Emerald Pointe was overcharging its customers through the

collection of a "sewer commodity charge." The Commission noted that the overcharging issue

was an issue that could have been brought in a complaint case, which would have been a separate

action from the rate case. However, by agreement of the parties, the Commission allowed the

complaint case to be litigated concurrently with the rate case. After a hearing, the Commission issued a Revised Report and Order, which authorized an increase in Emerald Pointe's annual sewer and water system operating revenues and which concluded that the Office of the Public Counsel failed to meet its burden of proving that the tariff presented to the Commission for approval in 2000 was Emerald Pointe's lawful tariff and, therefore, failed to prove that Emerald Pointe violated its tariff by collecting a sewer commodity charge from its customers. The Office of Public Counsel appeals from that Revised Report and Order complaining only about the Commission's resolution of the sewer commodity charge. The Office of Public Counsel contends that the Commission's actions constituted improper retroactive ratemaking and that the Commission improperly applied a presumption that a previously approved tariff was unlawful. We affirm.

## Background

Emerald Pointe is a "public utility," a "sewer corporation," and a "water corporation," as defined in sections 386.020 (43), (49), and (59), RSMo Cum. Supp. 2013. The Public Service Commission is a state administrative agency responsible for regulating public utilities, including sewer and water corporations, operating within the state. *State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 186 (Mo. banc 2011). The Office of Public Counsel is a state agency that represents consumers in all utility proceedings before the Commission and in all appeals of Commission orders. §§ 386.700 and 386.710, RSMo 2000.

On July 16, 2012, Emerald Pointe filed a letter with the Commission requesting an increase of $186,000 in its annual sewer system operating revenues and an increase of $13,000 in its annual water system operating revenues. By filing the letter, Emerald Pointe initiated a rate case under the Commission's Small Utility Rate Case Procedure as set forth in 4 CSR 240-3.050.

2

As provided in 4 CSR 240-3.050(6), the Commission's staff and Public Counsel undertook an investigation and audit of Emerald Pointe's water and sewer operations. On March 14, 2013, the Commission's staff and Emerald Pointe filed a partial disposition agreement with the Commission that purported to resolve several of the issues between them. However, the Commission's staff and Emerald Pointe were unable to resolve all issues and asked the Commission to resolve the remaining issues through contested case procedures. Subsequently, on March 18, 2013, the Office of Public Counsel objected to certain aspects of the disposition agreement and requested that an evidentiary hearing be held on all issues. In particular, the Office of Public Counsel requested an evidentiary hearing on the "[a]ppropriate amount of refund of sewer commodity charge, late fees and reconnection fees" and the "[a]ppropriate refund procedure for sewer commodity charge, late fees, reconnection fees and customer deposits."

On April 17, 2013, the Commission conducted a local public hearing in Branson, near Emerald Pointe's service area. At that hearing, the Commission heard comments from Emerald Pointe's customers and the public regarding Emerald Pointe's request for a rate increase. Comments were also received regarding alleged unauthorized charges by Emerald Pointe.

In compliance with the established procedural schedule, the parties pre-filed direct, rebuttal, and surrebuttal testimony. The Commission held a hearing on May 9, 2013. The evidence at the hearing established that Emerald Pointe had last changed its sewer rates as a result of a Small Company Increase Procedure in 2000.[1] In that rate case, Emerald Pointe initiated the rate case process on May 20, 1999, by sending a letter from its President, Gary Snadon, to the Executive Secretary of the Commission. In the letter, Emerald Pointe asked for a

---

[1]That procedure was contained in 4 CSR 240-2.020 at that time.

ten percent increase to both its base rate and its existing sewer commodity usage rate.[2] At that time, Emerald Pointe's tariff authorized it to collect a sewer commodity charge in the amount of $5.83 per 1,000 gallons. Upon receiving the rate increase request letter from Emerald Pointe, the Commission's staff undertook an audit of the utility's books and records to evaluate the need for a rate increase.

On March 7, 2000, Wendall R. "Randy" Hubbs, from the Commission's staff, sent a letter to Snadon, in which Hubbs forwarded the rate case disposition agreement and the proposed tariff sheets to resolve Emerald Pointe's request for water and sewer rate increases. The Schedule of Sewer Rate included a "Usage Charge of $3.50 per 1,000 gallons" for all usage over 2,000 gallons a month. Consistent with the Commission's small company rate procedure at that time, Hubbs's letter asked Snadon to sign a letter drafted by the Commission's staff that requested a rate increase in the agreed upon amount, to sign the disposition agreement, and to review the proposed water and sewer tariffs. The letter instructed Snadon to mail the letter, the signed agreement, and the tariff sheets directly to Hubbs. Further, the letter stated that, upon the return of the all the documents, Hubbs would have the Commission's representative sign the agreement and would then "date the tariff sheets to comply with the Commission's rules." The letter specifically stated that Hubbs would "file the documents for [Emerald Pointe] with the Commission."

As instructed by Hubbs's letter, Snadon, on behalf of Emerald Pointe, signed the letter and disposition agreement. He then mailed the signed letter, which was addressed to Dale Hardy Roberts, Executive Secretary to the Commission, the signed disposition agreement, and the

---

[2]Emerald Pointe was not represented by legal counsel during the rate case. At the time, the Commission's staff encouraged small utility companies to proceed with small utility rate cases without engaging the services of an attorney.

tariffs to Hubbs. According to Snadon, his understanding of Hubbs's letter was that "by mailing all of the signed documents to Mr. Hubbs, I, on behalf of Emerald Pointe Utility, had filed the Tariff with the Commission."

After the documents were returned to the Commission, Dale Johansen, who was the manager of the Commission's water and sewer department in 2000, signed the disposition agreement on behalf of the Commission's staff. Hubbs then submitted the documents to the Commission on March 23, 2000, thereby opening the rate case that was assigned File No. SR-2000-595. However, the sewer tariff that was filed as part of File No. SR-2000-595 was not the same tariff that Snadon returned to the Commission's staff to be filed. The Schedule of Sewer Rates in the tariff sheet filed as a part of File No. SR-2000-595 did not include a sewer commodity charge of $3.50 per 1,000 gallons.

According to Johansen, a copy of the documents submitted to the Commission would not have been mailed to Emerald Pointe. Further, Johansen said that the Commission staff's file did not contain any correspondence from the Commission's staff to Emerald Pointe regarding the deletion of the sewer commodity charge from the Schedule of Sewer Rates. He said that he found no documentation in the file explaining why the sewer tariff was changed before it was submitted to the Commission[3] and that he found no documentation in the file establishing that Emerald Pointe was ever informed that the Commission's staff planned to remove the sewer

---

[3]According to the Commission's staff witness, James A. Busch, documents in the staff's file show that the staff agreed Emerald Pointe should receive an increase in sewer revenues in the amount of $2,500, which represented the ten percent that Emerald Pointe requested. Busch said that, based on the then current Emerald Pointe revenues, plus the $2,500 increase, Emerald Pointe should have been allowed to collect total sewer operating revenues of $35,909. Busch said that the monthly customer charges incorporated in the tariff produced that amount of revenue without including any additional revenue from a sewer commodity charge. Therefore, Busch said that the staff never developed a sewer commodity charge for Emerald Pointe's sewer tariff. According to Busch, it was a typographical error for the original tariff sheet, which was sent to Emerald Pointe, to include the $3.50 sewer commodity charge.

commodity charge from the tariff. Johansen said that, if the Commission's staff intended to submit a different tariff sheet to the Commission than the one agreed upon by Emerald Pointe, the Commission's staff "most likely" would have sent written correspondence to Emerald Pointe informing Emerald Pointe that it intended to submit a different tariff sheet.[4]

On May 4, 2000, the Commission approved the sewer tariff that the Commission's staff had submitted to the Commission. The sewer tariff did not include a sewer commodity charge of $3.50 per 1,000 gallons. Based upon the agreement between Emerald Pointe and the Commission's staff, the Commission approved Emerald Pointe's sewer rate without conducting an evidentiary hearing. The Office of the Public Counsel did not join in that agreement, but it did not object to it either. The sewer tariff submitted by the Commission's staff to the Commission, which excluded the commodity sewer charge, was entered into the Commission's tariff book as the Commission's tariff for Emerald Pointe. Snadon testified that he never received a copy of the approved sewer tariff from the Commission

At the conclusion of the 2000 sewer rate case, Emerald Pointe began charging its customer the $3.50 per 1,000 gallon sewer commodity charge that was included in the version of the tariff that was provided to Emerald Pointe and that was returned to the Commission's staff by Snadon as Emerald Pointe's tariff. Emerald Pointe continued to collect the sewer commodity charge from its customers until May 1, 2012. As it was preparing to make its current request for a sewer rate increase, Emerald Pointe's attorney noticed the discrepancy between the sewer tariff shown on the Commission's record and what Emerald Pointe believed to be its sewer tariff.

---

[4]Busch, confirmed that Johansen's review of the Commission's file was accurate but stated that the staff cannot confirm that the file contains "a complete and accurate record of all correspondence between Staff and the Company." Busch explained, "Over the past 12 years, files get moved and employees come and go, so there is no guarantee what Staff has is complete. Further, it is possible that a substitute tariff could have been filed and no written correspondence was ever created. Any error could have been discussed over the phone or in person."

Emerald Pointe informed the Commission's staff of the discrepancy and, at the request of

Commission's staff, stopped collecting the usage charge. According to Snadon, he was surprised

to learn that the Commission had a tariff that did not reflect a sewer commodity/usage charge.

Snadon said:

> Emerald Pointe had a commodity/usage charge prior to Case No. SR-2000-595[.]
> Emerald proposed a continuation of that charge in Case No. SR-2000-595 and the
> tariff sheet prepared by and provided to me by the Staff in that case carried a
> sewer commodity/usage charge of $3.50 per 1,000 gallons. I was unaware that
> there was a sewer rate sheet in existence that did not include a sewer
> commodity/usage rate.

The Office of Public Counsel's witness, Keri Roth, calculated that, for the period between

May 10, 2000, when Emerald Pointe began collecting the $3.50 per 1,000 gallon sewer

commodity charge from its customers, through March 31, 2012, when Emerald Pointe stopped

collecting the $3.50 per 1,000 gallon sewer commodity charge from its customers, Emerald

Pointe collected $346,650.34 from its customers by means of the sewer commodity charge. The

Office of Public Counsel urged the Commission to required Emerald Pointe to refund that entire

amount to its customers along with interest in the amount of $156,445.38, for a total refund of

$503,095.71.[5] The Commission's staff witness, James Busch, recommended that the

Commission require Emerald Pointe to refund $187,683 to its customers, which represented the

money the company collected through the sewer commodity charge in the last five years before

the discovery of what the Commission's staff believes was an overcharge, and $69,567 in

---

[5]The Office of Public Counsel would have the refund amount continue to accrue compound interest until
Emerald Pointe refunds the money to its customers.

7

interest.[6]  Busch said that he believed that Emerald Pointe's collection of the sewer commodity charge was a mistake rather than a willful violation of the tariff.

Emerald Pointe did not request another sewer rate increase until 2012 when it instituted this case.  After the hearing, the Commission issued a Report and Order on July 10, 2013, and a Revised Report and Order on September 24, 2013.  In the Revised Report and Order, the Commission noted that the overcharging issue was an issue that could have been brought in a complaint case, which would have been a separate action from the rate case.  However, the Commission acknowledged that the parties agreed that the complaint case could be litigated concurrently with the rate case.  In the Revised Report and Order, the Commission authorized an increase in Emerald Pointe's annual sewer and water system operating revenues.  The Commission, however, concluded that the Office of Public Counsel failed to meet its burden of proving that the tariff presented to the Commission for approval in 2000 was Emerald Pointe's lawful tariff, and, therefore, failed to prove that Emerald Pointe violated its tariff by collecting a sewer commodity charge of $3.50 per 1,000 gallons from its customers.  The Office of Public Counsel appeals.

## Analysis

Our review of the Commission's decision has two steps:  first, we must determine whether the Commission's order is lawful and, second, whether the order is reasonable.  *Office of Pub. Counsel v. Mo. Pub. Serv. Comm'n*, 409 S.W.3d 371, 375 (Mo. banc 2013).  An order is lawful if the Commission had the statutory authority to act as it did.  *Id.*  In determining the lawfulness of the order, this court exercises unrestricted independent judgment and must correct

---

[6]The Commission's staff stated that it would limit collection of the overcharge to five years based on 4 CSR 240-13.025.

erroneous interpretations of the law. *State ex rel. Associated Natural Gas Co. v. Pub. Serv. Comm'n of State of Mo.*, 37 S.W.3d 287, 292 (Mo. App. 2000). A reasonable order is an order that is not arbitrary or capricious and is not an abuse of the Commission's discretion. *Office of Pub. Counsel*, 409 S.W.3d at 375. A Commission order is reasonable if it is supported by substantial and competent evidence on the whole record. *Id*. The Commission's order has a presumption of validity, and the burden is on the party attacking it to prove that the order is unlawful or unreasonable. *Id*. "The party seeking to set aside the Commission's order has the burden to prove by clear and satisfactory evidence that the order was unlawful or unreasonable. § 386.430, [RSMo 2000]." *State ex rel. BPS Tel. Co. v. Mo. Pub. Serv. Comm'n*, 285 S.W.3d 395, 401-02 (Mo. App. 2009).

In its first point on appeal, the Office of Public Counsel contends that the Commission erred in its Revised Report and Order when it replaced the tariff that was approved by the Commission in Case No. SR-2000-595 with a tariff that was not approved by the Commission. The Office of Public Counsel asserts that the Commission's actions were unlawful and constituted improper retroactive ratemaking. We disagree.

At issue before the Commission were two very distinct issues: determining the rates Emerald Pointe could charge its customers going forward for water and sewer services and determining whether Emerald Point had in the past overcharged its customers by collecting a sewer commodity charge. The Commission noted that the overcharging issue was an issue that could have been brought in a complaint case, which would have been a separate action from the rate case. However, by agreement of the parties, the Commission allowed the complaint case to be litigated concurrently with the rate case. The Commission then bifurcated its analysis and

treatment of the rate case issue from the analysis and treatment of the complaint case issue in its Revised Report and Order.

The Office of Public Counsel does not appeal from the Commission's resolution of the rate case issues, where the Commission authorized an increase in Emerald Pointe's annual sewer and water system operating revenues. The Office of Public Counsel appeals only from the Commission's resolution of the complaint case but utilizes language peculiar to a ratemaking issue by arguing that the Commission's actions on the complaint case constituted "improper retroactive ratemaking."

"Retroactive ratemaking is defined as '*the setting of rates* which permit a utility to recover past losses or which require it to refund past excess profits collected under a rate that did not perfectly match expenses plus rate-of-return with the rate actually established.'" *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n for the State of Mo.*, 311 S.W.3d 361, 365 (Mo. App. 2010) (quoting *State ex rel. Util. Consumers Council of Mo,. Inc. v. Pub. Serv. Comm'n*, 585 S.W.2d 41, 59 (Mo. banc 1979)) (emphasis added). Pursuant to the filed rate doctrine as set forth in section 393.140(11), RSMo 2000,[7] a utility company is prohibited "'from collecting any rates other than those properly filed with the appropriate regulatory agency.'" *AG Processing*, 311 S.W.3d at 365 (citation omitted). "'This aspect of the filed rate doctrine constitutes a rule against retroactive ratemaking or retroactive rate alteration.'" *Id*. (citation omitted). The doctrine prohibiting retroactive ratemaking, however, is not applicable in this complaint case involving the sewer commodity charge because the Commission did not set any rates. For the Commission to have engaged in retroactive ratemaking, it would have had to have instituted a new rate that

[7]Section 393.140(11) provides in part: "No corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time[.]"

10

sought to collect some historic costs from the consumers or costs from the utility company.[8]  This the Commission did not do.  The Commission merely found that that the Office of Public Counsel failed to meet its burden of proving that the tariff presented to the Commission for approval in 2000 was Emerald Pointe's lawful tariff.  Therefore, the Office of Public Counsel's first point on appeal is without merit.

In its second point on appeal, the Office of Public Counsel asserts that the Commission improperly applied a presumption that an approved tariff was unlawful and complains about the Commission's determination that Emerald Pointed did not violate its tariff on the basis that the Office of Public Counsel failed to prove that the approved tariff from Case No. SR-2000-595 was Emerald Pointe's lawful tariff.  Essentially, the Office of Public Counsel is complaining about its burden of proof.

"In cases where a complainant alleges that a regulated utility is violating the law, its own tariff, or is otherwise engaging in unjust or unreasonable actions, . . . the burden of proof at hearing rests with complainant." *AG Processing, Inc. v. KCP & L Greater Mo. Operations Co.*, 385 S.W.3d 511, 514 (Mo. App. 2012) (citations and internal quotation marks omitted).  The burden of proof has two parts:  the burden of production and the burden of persuasion. *White v. Director of Revenue*, 321 S.W.3d 298, 304 (Mo. banc 2010).  As the *White* court explained:

---

[8]We note that, even if the Office of Public Counsel had met its burden of proof in the complaint case, it would have been unlawful for the Commission to have authorized a refund of the sewer commodity charge into the new tariff.  "The Commission . . . does not have the authority to retroactively correct rates or to order refunds.  'Nor can the Commission take into account overpayments when fashioning prospective rates.'" *State ex rel. Pub. Counsel v. Pub. Serv. Comm'n of State of Mo.*, 259 S.W.3d 23, 31 (Mo. App. 2008) (citations omitted).  Indeed, in its Revised Report and Order, the Commission recognized that it had no authority to order Emerald Pointe to make a refund to its customers and that it merely had the authority to determine whether Emerald Pointe violated its tariff. The Commission further noted that, if a party wanted to seek a refund, it would have to seek relief in the appropriate circuit court.

11

> The burden of production is "a party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder[.]"  BLACK'S LAW DICTIONARY 223 (9th ed.2009).  The burden of persuasion is defined as "[a] party's duty to convince the fact-finder to view the facts in a way that favors that party."  *Id*.

*White*, 321 S.W.3d at 304-05.

The burden of producing evidence is "simply the burden of making or meeting a prima facie case."  *McCloskey v. Koplar*, 46 S.W.2d 557, 563 (Mo. banc 1932).  Once a plaintiff has discharged his burden of production, the burden shifts to the other party "to produce, if he desires, competent controverting evidence which, if believed, will offset the plaintiff's prima facie case."  *Id*.  "If this is done the defendant has met the burden of evidence cast upon him, and made a prima facie defense, whereupon the burden swings back to the plaintiff to bring forward evidence in rebuttal, and so on."  *Id*.  While the burden of producing evidence may shift from one party to the other and back again, the burden of persuasion does not.  *Brinker v. Director of Revenue*, 363 S.W.3d 377, 380 (Mo. App. 2012).  The party having the burden of proof carries "'the risk of nonpersuasion.'"  *McCloskey*, 46 S.W.2d at 563 (citation omitted).  Therefore, if the evidence is "equally balanced and the [fact-finder] is left in doubt, the litigant having the burden of proof loses; he must sustain his case by the greater weight of the evidence."  *Id.*

In this case, the Office of Public Counsel met its burden of production by producing the tariff submitted by the Commission's staff that did not include the sewer commodity charge. Emerald Pointe then introduced into evidence the tariff that it had approved and submitted to the Commission's staff for filing with the Commission along with the circumstances surrounding Emerald Pointe's approval of that tariff.  Emerald Pointe's tariff included the sewer commodity charge.  Once Emerald Pointe's evidence was proffered, the Office of Public Counsel could either stand on its rebuttable presumption or rebut this evidence and persuade (or fail to

12

persuade) the Commission that the tariff that did not include the sewer commodity charge was the lawful tariff. Although the Office of Public Counsel asserts that the Commission "improperly applied a presumption that the approved tariff was unlawful," the Commission did no such thing. Instead, the Commission determined that the Office of Public Counsel did not meet its burden of persuasion of establishing that the tariff submitted by the Commission's staff, which did not include the sewer commodity charge, was Emerald Pointe's lawful tariff.

The Office of Public Counsel makes the assumption that the tariff in the Commission's file was a valid tariff. Although it is true that a tariff has the same force and effect as a statute and that it becomes state law when approved by the Commission, *State ex rel Union Elec. Co. v. Pub. Serv. Comm'n of State of Mo.*, 399 S.W.3d 467, 477 (Mo. App. 2013), section 386.270, RSMo 2000, provides:

> All rates, tolls, charges, schedules and joint rates fixed by the commission shall be in force and shall be prima facie lawful, and all regulations, practices and services prescribed by the commission shall be in force and shall be prima facie lawful and reasonable until found otherwise in a suit brought for that purpose pursuant to the provisions of this chapter.

In this complaint suit,[9] in which the Office of the Public Counsel asked the Commission to determine whether Emerald Pointe was authorized to collect a sewer commodity charge pursuant to the tariff on file with the Commission, the Commission had the authority to determine whether Emerald Pointe violated the tariff by collecting the sewer commodity charge and in making that determination that Commission necessarily had the authority to determine whether the tariff on file with the Commission was a lawful tariff. Thus, the Commission's order finding that the

---

[9]The Commission found that, although the issue concerning the possible customer refunds was raised in the context of Emerald Pointe's request for a rate case, it was not a rate case issue because it did not "concern the company's cost of service and the rates that are to be established to allow the company to recover those costs going forward." The Commission determined that the issue in this case concerned whether Emerald Pointe had violated its tariff and that the action was a complaint against Emerald Pointe as permitted by section 386.390, RSMo 2000.

13

Office of Public Counsel failed to meet its burden of proving that the tariff presented to the Commission for approval in 2000 was Emerald Pointe's lawful tariff and, therefore, failed to prove that Emerald Pointe violated its tariff by collecting a sewer commodity charge from its customer, was a lawful order.

As recognized by the Office of Public Counsel, "[t]ariff means a document *published by a public utility*, and approved by the commission, that sets forth the services offered by that utility and the rates, terms and conditions for use of those services."  4 CSR 240-3.010(28) (emphasis added).  The Commission determined that the Office of Public Counsel failed to meet its burden of proving that the tariff presented to the Commission for approval in 2000 was Emerald Pointe's lawful tariff.  In so ruling, the Commission found that no statutory authority existed authorizing the Commission's staff to file a tariff on behalf of a regulated utility.  Indeed, section 393.140(11), RSMo 2000, gives the Commission the authority to require utilities to file with the Commission "schedules showing all rates and charges" the utility will charge its customers.  In particular, section 393.140(11) provides that the commission shall:

> Have power to require every . . . sewer corporation to file with the commission and to print and keep open to public inspection schedules showing all rates and charges made, established or enforced or to be charged or enforced[.] . . . Unless the commission otherwise orders, no change shall be made in any rate or charge, or in any form of contract or agreement, or any rule or regulation relating to any rate, charge or service, or in any general privilege or facility, *which shall have been filed and published by a . . . sewer corporation* in compliance with an order or decision of the commission[.] . . . No corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time[.]

The parties agree that Emerald Pointe filed its request for a rate increase in 1999 pursuant to the small company rate increase procedure in effect in at that time, which was contained within 4 CSR 240-2.200.  Pursuant to that procedure, the regulation instructed that if the

14

Commission's staff, the company, and the public counsel were in agreement concerning additional revenues, the agreement should be reduced to writing. 4 CSR 240-2.200(1)(C). The regulation then instructed that *"[t]he company may then file tariff sheet(s)* with a thirty (30)-day effective date and no additional customer notice or local public hearing shall be required, unless otherwise ordered by the commission." 4 CSR 240-2.200(1)(C) (emphasis added). The regulation also stated that "[t]he company shall file a copy of the agreement with its tariff." 4 CSR 240-2.200(1)(C).

Pursuant to the regulation, the Commission's staff presented Emerald Pointe with a disposition agreement prepared by the staff, which would allow Emerald Pointe to increase its sewer rate. The agreement stated that the rates would be increased by a specific amount but was silent as to how those additional rates would be collected from customers. Along with the disposition agreement, the Commission's staff also presented Emerald Pointe with a new proposed sewer tariff that allowed Emerald Pointe to collect a sewer commodity charge of $3.50 per 1,000 gallons.[10]

In a letter from the Commission's Assistant Manager of Rates in the Water and Sewer Department, Wendell R. "Randy" Hubbs asked Emerald Pointe's President, Gary Snadon, to sign a letter, drafted by the Commission's staff, that was addressed to the Commission's Executive Secretary and that requested a rate increase in the agreed upon amount. Hubbs also asked Snadon to sign the disposition agreement and to review the proposed water and sewer tariffs. The letter instructed Snadon to mail the letter, the signed agreement, and the tariff sheets directly to Hubbs. Further, the letter stated that, upon the return of the all the documents, Hubbs would

---

[10]Emerald Pointe's existing tariff at the time included a sewer commodity charge; thus, there was no reason for Emerald Pointe to question the continuation of the sewer commodity charge in the new proposed tariff prepared by the Commission's staff.

have the Commission's representative sign the agreement and would then "date the tariff sheets to comply with the Commission's rules." The letter specifically stated that Hubbs would "file the documents for [Emerald Pointe] with the Commission."

As instructed by Hubbs' letter, Snadon, on behalf of Emerald Pointe, signed the letter and disposition agreement. He then mailed the signed letter, the signed disposition agreement, and the tariffs to Hubbs. According to Snadon, his understanding of Hubbs's letter was that, by mailing all of the signed documents to Hubbs, Emerald Pointe had filed the tariff with the Commission.

After the documents were returned to the Commission, Dale Johansen, who was the manager of the Commission's water and sewer department in 2000, signed the disposition agreement on behalf of the Commission's staff. Hubbs then submitted the documents to the Commission on March 23, 2000, thereby opening the rate case that was assigned File No. SR-2000-595. However, the sewer tariff that Hubbs filed as part of File No. SR-2000-595 was not the same tariff that Snadon returned to the Commission's staff to be filed. The Schedule of Sewer Rates in the tariff sheet filed as a part of File No. SR-2000-595 did not include a sewer commodity charge of $3.50 per 1,000 gallons.

In finding that the Office of the Public of Counsel did not meet its burden of proving that the tariff presented to the Commission for approval in 2000 was Emerald Pointe's lawful tariff, the Commission specifically found that the tariff Hubbs filed with the Commission was never received or reviewed by Emerald Pointe. In its Conclusions of Law, the Commission stated:

> Emerald Pointe quite reasonably believed that the tariff it issued was also the tariff that had been submitted to the Commission's records department for inclusion in the company's tariff book and that the tariff it had issued was in effect. . . . Emerald Pointe did not issue the tariff that was on file with the Commission and it was not notified that the tariff presented to the Commission

16

for approval and inclusion in the Commission's records was not the tariff issued by the company. [The Commission's] Staff had no authority to file a tariff for Emerald Pointe and its presentation to the Commission of a tariff that was not issued by Emerald Pointe constituted a fraud against Emerald Pointe and the Commission.

It is likely that Staff mistakenly presented the wrong tariff to the Commission and there is no evidence of intentional wrongdoing by anyone. . . . In these circumstances, the tariff that was filed by Staff, and presented to the Commission for approval without the knowledge or approval of Emerald Pointe, is not the company's lawful tariff.

The Office of Public Counsel bore the burden of proving by clear and satisfactory evidence that the Commission's order was unlawful or unreasonable. *In re KCP & L Greater Mo. Operations Co.*, 408 S.W.3d 175, 182 (Mo. App. 2013). The Commission's staff had no authority to file a tariff on behalf of Emerald Pointe, especially given the fact that the modified tariff submitted to the Commission was not approved by, agreed to, or published by Emerald Pointe. As previously noted, "[t]ariff means *a document published by a public utility*, and approved by the commission, that sets forth the services offered by that utility and the rates, terms and conditions for use of those services." 4 CSR 240-3.010(28) (emphasis added). Because Emerald Pointe never authorized the filing of that tariff, the Commission concluded that the tariff "presented to the Commission for approval without the knowledge or approval of Emerald Pointe was not the company's lawful tariff." The Commission's decision, which found that the Office of Public Counsel failed to meet its burden of proving that the tariff presented to the Commission for approval in 2000 was Emerald Pointe's lawful tariff, was not unreasonable given that it was supported by substantial and competent evidence on the whole record, was not arbitrary or capricious, and was not an abuse of discretion.

17

**Conclusion**

The Commission's order concluding that the Office of the Public Counsel failed to meet its burden of proving that the tariff presented to the Commission for approval in 2000 was Emerald Pointe's lawful tariff and, therefore, failed to prove that Emerald Pointe violated its tariff by collecting a sewer commodity charge from its customers was not unlawful or unreasonable. We affirm the Commission's decision.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.